GEORGE WOOD, Appellant, v. MINNEAPOLIS & ST. LOUIS RAIL-
ROAD COMPANY, Appellee.

**MASTER AND SERVANT:** Fellow Servant—Use of Instrumental-
ity Furnished by Independent Fellow Servant. Liability of a
master may not be predicated on the act of a servant in using,
without the express or implied direction of the master, an in-
strumentality known by the servant to have been supplied by
another fellow servant solely for the independent, separate and
temporary use of the latter.

**MASTER AND SERVANT:** Place for Work—Scaffolds—Directions
to Use. Consent on the part of a vice-foreman that a servant
might "use" a certain plank may not, under the circumstances
attending the consent, amount to an express or implied direc-
tion to the servant to go upon the plank in its then condition
and use it as a platform.

**MASTER AND SERVANT:** Warning Servant—Obvious Dangers.
Principle recognized that there is no duty to warn when the
danger is obvious.

*Appeal from Webster District Court.*—R. M. WRIGHT,
Judge.

MONDAY, MARCH 12, 1917.

REHEARING DENIED MONDAY, JUNE 18, 1917.

ACTION for damages for personal injuries sustained
by plaintiff as a result of falling from a plank upon which
he was standing while engaged with his work. At the
close of plaintiff's evidence, the trial court sustained a mo-
tion for a directed verdict for the defendant. The plain-
tiff appeals.—*Affirmed.*

*Maurice O'Connor,* for appellant.

*Burnquist & Joyce,* for appellee.

Evans, J.—The plaintiff was an experi-

1. MASTER AND SERVANT: fellow servant: use of instrumentality furnished by independent fellow servant.

enced bridge worker, and, as such, was an employee of the defendant at the time of the accident in question. His particular work at the time of the accident was "tightening up the cord bolts." This work ordinarily required him to take a position on the cap of the bridge. From this position, he reached down to the bolts, and with a wrench tightened the burrs thereon. In this manner, the plaintiff had done his work and had proceeded from the south end of the bridge and tightened every bolt up to the last bolt at the north end. In the tightening of the last bolt, he encountered some inconvenience, and conceived the idea that he could tighten it more conveniently from the under side. This idea was perhaps stimulated to some extent by the fact that there was a plank in position on the under side which would furnish him standing room and from which he could reach the bolt. It was from this plank that he fell, and suffered therefrom a sprained ankle. The circumstances attending the placing of this plank in position and the use thereof by the plaintiff are an important consideration.

The regular foreman was not present with the crew on the day of the accident. Casey, another workman, acted as vice-foreman. He also engaged in his regular work as a fellow workman with the other members of the crew. Early in the day, for his own temporary use, Casey had procured this plank and put it in position. This position was that one end thereof was allowed to rest upon the top of the bank, and the other end rested upon the timbers of the bridge. These timbers consisted of an upright piling and a diagonal brace called the sway brace. The upright piling and the diagonal brace formed an angle, and the further end of this plank rested in such angle. The plank was 12 inches wide and 3 inches thick. It was not nailed. Casey

used it for a brief time until he had finished his work thereon. The plaintiff was present, and saw Casey put the plank in position and saw him use it. It was two hours thereafter that the plaintiff got upon the plank himself. He worked thereon for several minutes. In his efforts at tightening the bolt, his wrench slipped. The plank tilted on one edge, and the plaintiff went to the ground, 5 or 6 feet below.

The contention for the plaintiff is that the plank was in the nature of a scaffolding, and that it was not a safe place to work; that he was entitled to warning of the danger thereof and received none; that he was expressly directed by Casey to go upon such plank for the purpose of his work. It is contended that it was the duty of the defendant or its vice-principal to have made such plank more secure, either by the use of ropes or hangers or toenailing. The plank was not put there for the plaintiff's use. He knew that. He saw it put there by Casey, and knew that it was so put only for Casey's temporary use for his own work. He knew that it was not protected by hangers or ropes or nails. The act of Casey in putting it there was not the act of a principal or a vice-principal. Assuming that Casey was a vice-principal for some purposes, he was also a fellow workman. He used the plank for doing the work of a fellow workman only. There was no actual negligence, then, to be found in the manner in which the plank was put in position. It is urged, however, that even this did not excuse him from the duty to warn the plaintiff of the danger of using the plank. The duty to warn ordinarily pertains to unknown and nonobvious dangers, and has its most frequent application in dealing with inexperienced persons. In this case, there was nothing known or obvious to Casey that was not as well known and obvious to the plaintiff. Casey could have told him nothing about the plank that he did not already know.

Passing this point, however, the empha-
sis of the appeal is laid upon the proposition
that the plaintiff was directed by Casey to
use this particular plank in this position as
a scaffold.   This contention is based upon the following
testimony by the plaintiff:

2. Master and Servant: place for work: scaffolds: directions to use.

"A.   I asked Mr. Casey if he was using the scaffold—
if he was through with the scaffold—and he said, 'Yes,
use it.' * * *  A.   I asked him if he was through with
the scaffold, and he said, 'Yes, use it.' "

Can it be said that the foregoing amounted to a direc-
tion from Casey that the plaintiff use this plank as a scaf-
fold?   At the time of this conversation between the plaintiff
and Casey, Casey was at the further end of the bridge.   He
had not been upon the plank for some time   It is not claimed
that the plaintiff advised Casey that he wanted to use the
plank as a scaffold.   For the purpose of tightening bolts,
his place was upon the top of the bridge.   He had never
before tightened a cord bolt from the under side nor used
a scaffold for that purpose.   He did not advise Casey that
he wished to make such experiment then.   It is urged that
the question which he put to Casey implied plaintiff's pur-
pose to go upon the plank himself.   We think no such im-
plication could fairly arise from the question put.   If the
plaintiff merely wished to use the plank for a few moments,
there was no apparent occasion for asking Casey any ques-
tion at all.   Plaintiff knew that Casey was not using the
plank, and knew that he was at the other end of the
bridge.   He did not, of course, know that Casey was *through*
with the plank.   That part of the question, therefore,
would have been appropriate if he had wanted to remove
the plank from its position.   Such purpose was the only
fair implication of his question.   In the light of the real
purpose of the plaintiff, the question as testified to by him
was quite incongruous.   It had no apparent purpose to

serve. Taking it, however, as he put it, and the answer of Casey thereto, we can see in it nothing more than a permission by Casey to the plaintiff to "use" the plank. If the implication of the question and answer was any broader than that, it was that he had permission to remove the plank for such use as he wished to make of it. The language of Casey cannot fairly be construed as a direction or command to the plaintiff to go upon such plank in its then position.

The situation, therefore, sums up briefly as follows: The plank was put in position by Casey for his own temporary use, and without any intent that it should be used by the plaintiff, and the plaintiff knew it. In putting such plank in position for his own use, he was not acting as a vice-principal. The danger involved in the use of the plank was as obvious to the plaintiff as it was to Casey, and there was no duty to warn. The plaintiff's appropriate place for his work was upon the cap of the bridge. Casey did not command or direct or request him to go upon the plank in question. We think, therefore, that the evidence wholly fails to show negligence on the part of the defendant or its vice-principal, and that the trial court properly directed the verdict.

3. MASTER AND SERVANT: warning servant: obvious dangers.

The judgment below is accordingly—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.